UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD BRODIE,

                                        Plaintiff,                    25-cv-103 (ALC)
                    -against-
                                                                     OPINION & ORDER
ALEXANDER S.C. ROWER ET AL

                                        Defendants.

ANDREW L. CARTER, JR., United States District Judge:

Plaintiff Richard Brodie brings this action against Defendants Alexander S.C. Rower,

The Calder Foundation, and Does 1-5 alleging Civil RICO, 18 U.S.C. § 1962(c); fraudulent

inducement; gross negligence; product disparagement; and tortious interference. Defendants now

move for dismissal of Plaintiff's First Amended Complaint ("FAC") pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure. ECF No. 33. After careful review, Defendant's motion is

GRANTED in part. All of Plaintiff's claims besides fraudulent inducement are time-barred.

Plaintiff makes out a claim for fraudulent inducement, so this claim survives.

## BACKGROUND

### I.    Factual Background

Defendant The Calder Foundation ("The Foundation") is a nonprofit founded and currently

run by members of Alexander Calder's family. First Amended Complaint ("FAC") ¶ 4. Calder was

a prolific American sculptor known for creating the mobile.[1] The Calder Foundation is "dedicated

to collecting, exhibiting, preserving, and interpreting Calder's art and archives." Defendants'

Motion to Dismiss the First Amended Complaint ("Deft. Mot.") at 5. Defendant Alexander S.C.

---

[1] Alicia du Plessis, *"Mobile" by Alexander Calder – A Kinetic Art Analysis*, Art in Context. Sept. 21, 2023,
https://artincontext.org/mobile-by-alexander-calder/.

1

Rower ("Rower") is Calder's grandson. He is the Founder and President of the Foundation.  FAC ¶ 49.

The Foundation provides a free service to owners of works attributed to Calder by allowing them to submit their works for evaluation and possible registration in the Foundation's archive. *Id.* ¶ 5. If a work is registered in the archive, it is assigned an "A-number." *Id.* ¶ 6.

Plaintiff Richard Brodie is the President of the Committee at the Detroit Institute of Arts and a prominent art collector, including of Calder works. *Id.* ¶ 42. In 1994, Plaintiff bought a mobile ("The Mobile") from Klaus Perls, Calder's close friend and exclusive American gallerist between 1955-1976. *Id.* ¶ 60. The Foundation registered the Mobile as an authentic Calder artwork in its archive and assigned the Mobile an A-number at some time before Plaintiff purchased it. *Id.* ¶ 62.

Plaintiff alleges that the Foundation requires owners of Calder works with A-numbers already assigned to return to the Foundation for A-number "renewals" when owners decide to sell their art. *Id.* ¶ 13. It is unclear from the Amended Complaint whether Plaintiff went through an A-number renewal process with Defendants when he purchased the Mobile in 1994, meaning it is unclear in 1994 whether the Defendants considered the Mobile authentic.

In 2018, Plaintiff decided he wanted to sell the Mobile to a gallery ("Gallery A") in New York City. *Id.* ¶ 65. Plaintiff alleges the Mobile was consigned to Gallery A for $8 million net to him (and was insured for $9 million for the period of the consignment agreement). *Id.* ¶ 67. Gallery A sent the Mobile to the Foundation in late November 2018 with a request that the Foundation renew the Mobile's A-number. *Id.* ¶ 68. The Foundation did not renew the Mobile's A-number and returned it to Gallery A in December 2018. *Id.* ¶ 69. Plaintiff alleges that the Mobile was returned to Gallery A without its original hanging hardwire and with a break to one of its glass shards; Gallery A attempted to repair the damage. *Id.* ¶¶ 69, 71.

In 2019, Plaintiff tried to sell the Mobile again, this time to an Auction House. *Id*. ¶¶ 77-78. The Auction House engaged Conservator Mack, who had worked with the Foundation in the past, to perform work on the Mobile. *Id*. ¶ 85. Mack submitted a condition report to the Auction House, not reporting any remarkable problems. *Id*. ¶ 86. In November 2019, the Auction House told Plaintiff that he needed to have the Mobile's A-number renewed. *Id*. ¶ 88. Later, at the explicit direction of the Foundation, Mack was asked to perform additional restoration work on the Mobile *Id*. ¶¶ 96-100. Mack then issued another report, but this time it criticized every facet of the Mobile. *Id*. ¶ 102. The Foundation, once again, did not renew the A-number and sent a condition report about the Mobile's state to the Auction House. *Id*. ¶ 111. Based on this, a prospective buyer from Japan who had been in agreement to buy the Mobile backed out. *Id*. ¶ 116.

In November 2020, the Auction House considered putting the Mobile up for auction. *Id*. ¶ 129. The Auction House secured a third-party guarantor from Monaco, who only agreed to guarantee the Mobile at a price of $4 million because he had "heard a rumor [the Mobile was] in bad condition." *Id*. ¶ 130. Defendant Rower apparently spoke with the guarantor over the phone, who eventually backed out of his agreement. *Id*. ¶ 131.

In 2024, Plaintiff tried again to auction the Mobile. *Id*. ¶ 132. The Auction House sought a renewal of the Mobile's A-number, and this time, the Foundation decided to rescind the A-number altogether because the Mobile was "no longer in a state that reflects the intentions of Alexander Calder." *Id*. ¶¶ 140-142.

In September 2024, Plaintiff demanded that the Foundation reverse its decision to rescind the Mobile's A-number. *Id*. ¶ 166. In October 2024, the Foundation refused, claiming it had done nothing more than express an "opinion" about the Mobile. *Id*. ¶ 168.

3

## II.    Procedural History

Plaintiff filed his Complaint on January 6, 2025. ECF No. 1. On April 25, 2025, Plaintiff filed his First Amended Complaint. ECF No. 27. After a May 22, 2025 pre-motion conference, Defendants filed their Motion to Dismiss Plaintiff's First Amended Complaint on June 25, 2025. ECF No. 34. Plaintiff filed his Opposition on July 30, 2025. ECF No. 37. Defendants filed their Reply on August 20, 2025. ECF No. 38.

On March 2, 2026, the Court issued an order to show cause as to whether any or all of the claims are impacted by former Governor Cuomo's Executive Order 202.8, which tolled the statute of limitations for certain claims for 228 days. ECF No. 39. On March 6, 2026, the Parties filed their responses. ECF Nos. 40, 41. On March 9, 2026, the Second Circuit issued *Bugliotti v. Republic of Argentina*, No. 24-2950, 2026 WL 643747 (2d Cir. Mar. 9, 2026), which impacts this case. On March 10, 2026, the Court issued an Order asking the Parties to address how the new decision impacts this case. ECF No. 42. On March 13, 2026, the Parties submitted their responses. ECF Nos. 43, 44.

## STANDARD OF REVIEW

When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiffs' favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citations omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not credit "[t]hreadbare recitals of the

4

elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## DISCUSSION

### I.    Timeliness of Claims

Fraudulent inducement has a six-year statute of limitations; RICO has a four-year statute of limitations; gross negligence has a three-year statute of limitations; tortious interference has a three-year statute of limitations; and product disparagement has a one-year statute of limitations. Defendants argue that all of Plaintiff's claims, besides the two claims for fraudulent inducement, are time-barred because the events that led to Plaintiff's discovery that the Mobile had lost its value, the harm, occurred in 2018. Deft. Mot., at 12. As Plaintiff pleads in his Complaint, "Rower had apparently resolved not to allow Brodie to sell the Mobile because he returned the Mobile to Gallery A on December 21, 2018, without an A-number renewal, and with a statement to the gallery that Rower would speak directly to Brodie about the Mobile after the holidays." FAC ¶ 68. Defendants argue that on December 21, 2018, Plaintiff knew that the Foundation would not be renewing the A-number, so at that point, he knew he was unable to sell the Mobile on the market.

Plaintiff argues none of his claims are time-barred, first contending that the statute of limitations is an affirmative defense, so "a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." Plaintiff's Opposition ("Pl. Opp."), at 13, quoting *BPP Ill., LLC v. Royal Bank of Scotland Grp. PLC*, 603 F. App'x 57, 59 (2d Cir. 2015). However, as Defendants note in their Reply, courts regularly address whether claims are time-barred in motions to

5

dismiss if apparent on the face of the complaint. Defendants' Reply ("Deft. Rep.") at n. 2; *Thea v. Kleinhandler*, 807 F.3d 492 (2d Cir. 2015). Plaintiff's FAC includes a timeline of events from which the Court can ascertain when the alleged harm occurred. Thus, at this stage, the Court can consider whether to dismiss Plaintiff's claims based on their being time-barred.

In their initial papers, neither party addressed COVID-19-related tolling pursuant to former Governor Andrew Cuomo's Executive Order 220.8, which tolled the statute of limitations for some claims 228 days from March 20, 2020 to November 3, 2020. *Bugliotti v. Republic of Argentina*, 2026 WL 643747 (2d Cir. Mar. 9, 2026), at * 6. After supplemental briefing, Plaintiff concedes that the COVID-19-related tolling does not apply to the federal RICO claim because RICO does not borrow its statute of limitations provision from New York's statute of limitations. ECF No. 40; *Romero v. Manhattan & Bronx Surface Transit Operating Auth.*, No. 21-CV-4951 (LJL), 2022 WL 624451, at *6 (S.D.N.Y. Mar. 2, 2022). However, both Parties agree that the COVID-19-related tolling can apply to Plaintiff's state law claims.

The Parties' main disagreement as to whether Plaintiff's claims are time-barred involves determining when the harm allegedly occurred. Plaintiff argues  he did not "unequivocally" know that the Foundation would not validate the A-number in 2018. Pl. Opp., at 13. He says that in 2018 he believed the A-number was not renewed because the Defendants had damaged the Mobile and that it could be fixed with restoration. *Id.* Plaintiff appears to have hoped Rower would change his mind in the phone call he promised after the holidays. Plaintiff alleges that "at no time during the January 2019 call did Rower claim, or suggest, that the Mobile had suffered any substantial damage (at any time) that was supposedly incapable of being restored….Nor did Rower state or suggest that the Foundation might rescind the Mobile's A-number." FAC ¶¶ 75-76. Plaintiff asserts that only in 2024, when the A-number was ultimately rescinded, did he realize that Defendants had never

intended to renew it. Pl. Opp., at 13. "Defendants did not rescind the Mobile's A-number until July 15, 2024. Brodie sued five and a half months later, on January 7, 2025." *Id*. at 14.

The claim with the longest statute of limitations is fraudulent inducement. "The statute of limitations for fraudulent inducement is the greater of six years from the date the cause of action accrued or two years from the time the plaintiff discovered the fraud or could with reasonable diligence have discovered it." *See* N.Y. C.P.L.R. 213(8). Defendants contend the cause of action accrued on December 21, 2018, when the A-number was first not renewed, while Plaintiffs appear to contend the accrual date is July 15, 2024, when the A-number was rescinded. The Court is not convinced that July 15, 2024 is the date when Plaintiff's cause of action accrued, given that this date was just the latest of several instances in which Plaintiff learned that his Mobile was no longer marketable. However, even if the Court uses the December 21, 2018 date, because of the COVID-19-related tolling, Plaintiff had until August 6, 2025 to bring these claims. Therefore, Plaintiff's fraudulent inducement claims are timely.

There is a four-year statute of limitations for civil RICO, which "begins to run when the plaintiff discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. P'ships Litig.,* 154 F.3d 56, 58 (2d Cir.1998). At the latest, the statute of limitations expired in December 2024, four years after the guarantor backed out in 2020. Thus, Plaintiff's RICO claim is time-barred.

In New York, gross negligence has a three-year statute of limitations. N.Y.C.P.L.R. § 214. By the time the Guarantor backed out in November 2020, there were numerous indications of Defendants' wrongdoing. For instance, the Plaintiff alleges that in late 2018 when the Mobile was first returned to Gallery A from the Foundation, it was in a "different physical state than that in which it had been received," and the Foundation did not notify Plaintiff of this. *Id*. ¶ 70. When

7

explicitly asked over the phone in January 2019, Defendant Rower refused to acknowledge any damage to the Mobile that occurred while it was in the Foundation's care. *Id.* ¶ 73. Later in November 2019, when Plaintiff tried to sell the Mobile again, a representative from the Auction House spoke with Rower about a price for the Mobile, and Rower said it should not be sold for less than $8.3 million. *Id*. ¶ 81. This should have raised suspicion in Plaintiff who had just been told earlier that year by Rower that the Mobile's A-number was not being renewed because of its condition. Also in November 2019, the Auction House engaged one of the Foundation's preferred conservationists, Mack, to prepare a report about the Mobile's condition. *Id.* ¶ 85. She did not identify any remarkable problems with the Mobile in her November 2019 Report. *Id.* ¶ 86. Plaintiff alleges that Rower directed Mack not to provide a copy of the November 2019 Report to anyone, including Plaintiff. *Id*. ¶ 87. This should have raised additional suspicion. The allegations worsen through the end of 2019 and culminate in Plaintiff's inability to sell the Mobile in 2019 and 2020, apparently because of actions taken by Defendants. Plaintiff was on notice of Defendants' wrongdoing since November 2020, so applying the 228-day tolling, still would have required Plaintiff to have brought the gross negligence claim in 2024. Therefore, this, claim too, is time-barred.

Finally, the statutes of limitations period for tortious interference and product disparagement are three years and one year, respectively. *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.,* No. 12-CV-6383 (PKC) (SIL), 2025 WL 948111 (E.D.N.Y. Mar. 28, 2025) ("Under New York law, [t]he statute of limitations for tortious interference claims is three years.") (internal citations omitted); N.Y. C.P.L.R. § 215(3) (outlining the one-year period for product disparagement). "Tortious interference claims begin to run when an injury is sustained, not discovered." *Sky Med.* at *9 (internal citations omitted). The Court does not find that

Plaintiff's injury occurred when the A-number was rescinded in 2024. For purposes of tortious interference, the injury occurred when Plaintiff was first told the A-number was not being renewed on December 21, 2018 because this made the Mobile un-marketable. Therefore, adding the COVID-19-related tolling and not the equitable tolling, the statute of limitations expired for tortious interference on August 6, 2022. For product disparagement, courts have held that "the publication of a defamatory statement – however widespread its distribution – is in legal effect, one publication which gives rise to one cause of action, with the limitations period running from the date of publication." *Enigma Software Group USA, LLC v. Bleeping Computer LLC*, 194 F. Supp.3d 263, 276 (S.D.N.Y. 2016). Here, Plaintiff alleges that Defendants' engineering of the December 2019 Report on the Mobile's condition constituted the cause of action for product disparagement. FAC ¶ 243. Without equitable estoppel, this means the statute of limitations expired in August 2021.

Plaintiff says his time to bring claims for product disparagement and tortious interference should be equitably tolled because after December 2019, the Defendants "conceal[ed] information from him, and ke[pt] him in a state of uncertainty about their intentions and wrongdoing until July 15, 2024, when they rescinded the Mobile's A-number." *Id*. ¶¶ 252, 260. "Under New York law, a claim for tolling based on fraudulent concealment is…no different from a claim for tolling based on equitable estoppel*." Poulard v. Delphin*, No. 24-3015, 2025 WL 1417664, at *3 (2d Cir. May 16, 2025). Therefore, the Court will analyze whether equitable estoppel applies to Plaintiff's product disparagement and tortious interference claims. "In New York, 'equitable estoppel' is applicable 1) where the defendant conceals from the plaintiff the fact that he has a cause of action and 2) where the plaintiff is aware of his cause of action, but

9

the defendant induces him to forego suit until after the period of limitations has expired." *Koral v. Saunders*, 36 F.4th 400, 409–10 (2d Cir. 2022) (internal quotations omitted and cleaned up).

In his Opposition, Plaintiff tries to differentiate his investigation efforts from those in *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012), where the plaintiff did not pursue investigation for over four years and the Court there declined to toll the statute of limitations. Pl. Opp. at 15. However, as this Court has already held, Plaintiff had ample opportunity to investigate the Defendants' claims about the Mobile's condition from the time they first decided not to renew the A-number in 2018 through the guarantor's decision to back out of the sale in 2020. Even if the Court were to equitably toll the statute of limitations for two years, there is no reason why it should toll the statute for over four years. Therefore, the Court finds that the product disparagement and tortious interference claims are time-barred.

II.      12(b)(6) Arguments

All of Plaintiff's claims besides fraudulent inducement are time-barred. However, in the alternative, the Court finds that Plaintiff has failed to adequately plead RICO, gross negligence, product disparagement, and tortious interference. Plaintiff has successfully plead fraudulent inducement.

A.  Plaintiff's RICO Claim Fails

A plaintiff bringing a RICO claim under 18 U.S.C. § 1962(c) must show "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains [an] interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir. 1983)). Defendants argue that Plaintiff has not

alleged an open-ended continuity of predicate acts and that he has not pleaded predicate acts. Deft. Mot., at 15. Plaintiff pleads wire fraud and extortion as predicate acts. Pl. Mot., at 16.

Because the Complaint alleges fraud as a predicate act, the allegations are subject to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that "a party must state with particularity the circumstances constituting fraud or mistake." *RAMON MORENO-CUEVAS v. TOWN SPORTS INTERNATIONAL d/b/a New York Sports Club (NYSC), et al.*, No. 3:19-CV-1803 (KAD), 2026 WL 810046, at \*6 (D. Conn. Mar. 24, 2026). "Like allegations of securities fraud, allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir. 1993). Plaintiff contends that Defendants made "material misrepresentation that the Mobile suffered 'substantial damages' prior to 1989 that are 'impossib[le]' to restore." FAC ¶ 195. Specifically, the alleged misrepresentations are that Defendants did not damage the Mobile and that the December 2019 Report contained false information about the Mobile's condition. *Id.* ¶¶ 196-197. Defendants argue that these were not misrepresentations because they were true and/or merely opinions. Det. Mot., at 16. The Court agrees that Defendants' stating that the Mobile suffered "substantial damage" is Defendants' opinion. However, construing Plaintiff's allegations liberally, if Defendants did not honestly believe that the Mobile was "substantially damage[d]," Plaintiff may have a fraud claim. *See Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 130 (S.D.N.Y. 2014) ("Subjective falsity is established where either the appraiser or the person who reported the appraiser's opinion did not honestly believe the appraisal value.").

To plead wire fraud, a plaintiff must also demonstrate reliance on misrepresentations. *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 458-459 (S.D.N.Y. 2014). Here, Plaintiff does not appear to have relied on any of these misrepresentations. Plaintiff maintains he has been certain from the beginning that Defendants are the ones who broke the Mobile. He also claims he knew the December 2019 Report was false. However, courts also consider whether third parties relied on the misrepresentations. *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 (2d Cir. 2015). Plaintiff alleges that interested buyers relied on misrepresentations in the December 2019 Report. Therefore, wire fraud has been sufficiently plead as a predicate act.

Plaintiff must make out two or more predicate acts to sustain a RICO claim. Plaintiff does not make out extortion, so it cannot serve as a predicate act. Under NYPL 155.05(2)(e), "A person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will: (i) Cause physical injury to some person in the future; or (ii) Cause damage to property; or (iii) Engage in other conduct constituting a crime…[etc.]".

In his FAC, Plaintiff alleges, "Rower and DOES 1-5 repeatedly compelled Brodie against his will, in November 2019 and again in March 2024, to sign the Foundation's Examination Agreement, so that he would deliver the Mobile to the Foundation for purposes of A-number 'renewal,' under threat that Rower and DOES 1-5 would otherwise cause sellers of Calder artworks not to deal with Brodie to sell the Mobile." ¶ 193. This alleged "threat" does not constitute the conduct that the New York state extortion statute defines. At most, Defendants were exercising economic leverage in requiring Plaintiff to deliver the Mobile for purposes of A-number renewal. "Use of 'economic leverage' in an ordinary commercial negotiation . . . does not

constitute extortion." *Toms v. Pizzo*, 4 F. Supp. 2d 178, 184 (W.D.N.Y. 1998). The various cases Plaintiff cites in his Opposition do not support his position. Therefore, Plaintiff has failed to allege the sufficient predicate acts required to state a RICO claim.[2]

### B.  Plaintiff States a Claim for Fraudulent Inducement

Plaintiff alleges the Defendants engaged in fraudulent inducement in 2019 and 2024. First, he alleges Defendants "induced [him] to sign the Foundation's Examination Agreement on November 5, 2019, upon the reasonable belief that Rower and the Foundation would provide a learned and honest evaluation of the Mobile according to the Foundation's unique archive" and "intentionally deceived [him] to submit to the Foundation's direction and supervision of re-restoration work by Mack under the false and misleading indication that only minor work was to be performed, when, in fact, Rower and the Foundation intended to use the opportunity to re-examine the Mobile to generate the bogus December 2019 Report." FAC ¶¶ 214, 217. Then in 2024, Plaintiff alleges that he was once again induced to sign the Examination Agreement and "Rower and the Foundation intentionally deceived [him] to submit the Mobile to their auspices with the intent of disparaging the Mobile and fabricating false information about its condition that is unsupported by the Foundation's archive." *Id*. ¶¶ 226, 228.

"To plead a claim for fraudulent inducement under New York law, a plaintiff must allege the following elements: (1) a material misrepresentation or omission of fact, (2) defendant's knowledge of falsity, (3) defendant's intention to induce reliance, (4) reasonable reliance by the plaintiff, and (5) resulting injury or damages." *Schaffer v. GeneDx, LLC*, No. 25 CIV. 2550 (DEH) (GS), 2026 WL 265338, at *5 (S.D.N.Y. Jan. 30, 2026). At the time Plaintiff signed the

---

[2] Defendants briefly argue that the Examination Agreement precludes Plaintiff from bringing this suit because it contained a "covenant not to sue." Deft. Mot., at 12. But "where plaintiffs' claims sound in fraud, defendants may not invoke a covenant not to sue." *Taupita Inv., Ltd. v. Leung*, 2017 U.S. Dist. LEXIS 132408 (S.D.N.Y. Aug. 17, 2017). Therefore, Defendants' covenant not to sue argument fails.

13

Examination Agreement in November 2019, he was relying on Defendants' providing an honest evaluation of the Mobile. Defendants appear to have used the opportunity to re-examine the Mobile to generate the December 2019 Report, which reported a worse condition of the Mobile than the November 2019 Report. Because of this, buyers backed out of deals to purchase the Mobile. This similarly occurred in 2024. Therefore, the Court finds that Plaintiff has sufficiently pleaded fraudulent inducement.

### C.  Plaintiff's Gross Negligence Claim Fails

"Under New York law, to prevail on a claim for gross negligence, plaintiff must establish, the elements necessary to prevail on a claim for negligence—(1) duty; (2) breach; and (3) injury—plus a fourth element, namely, that defendant's conduct evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." (cleaned up and internal citations omitted). *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 352 (S.D.N.Y. 2023). Plaintiff must demonstrate the existence of a duty owed by Defendants irrespective of a contract. *Wright v. TD Bank, N.A.*, 2025 WL 89544, at *3 (S.D.N.Y. Jan. 14, 2025). Plaintiff does not demonstrate a duty owed outside of the Examination Agreement.

Plaintiff argues that there existed a special relationship between him and Defendants based on the Foundation's stated charitable purpose and unique expertise in the art world. Pl. Opp. at 22, citing *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996). However, the claim at issue in *Kimmell* is negligent misrepresentation, which has a different and heightened standard for duty than gross negligence. "The elements of a claim for negligent misrepresentation under New York law are (1) a duty in the defendant, as the result of a special relationship, to give correct information; (2) a false representation that the defendant knew [or] should have known to be incorrect; (3) the defendant's knowledge that the plaintiff wanted the information supplied for a serious purpose; (4) the plaintiff's intent to rely upon the information; (5) reasonable reliance; and (6) damages."

14

*Aaronson v. Kellogg Co.*, 837 F. App'x 850, 851 n.2 (2d Cir. 2021) (citing *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012)).

Even if this Court finds a heightened standard for the duty Defendants should have exercised when dealing with Plaintiff, the Court is not convinced there existed a special relationship between Defendants and Plaintiff. The New York Court of Appeals in *Kimmell* states that, "liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." 89 N.Y.2d 257, 263, 675 N.E.2d 450 (1996). However, later cases from the Court of Appeals confirm that to demonstrate a special relationship between a plaintiff and a defendant in the art world, a plaintiff needs to show that the defendant was retained for a specific purpose or else knew more about the specific sales plaintiff was lining up. *See Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 181, 944 N.E.2d 1104, 1109 (2011). Plaintiff's assertion that a duty of care was owed because Defendants had previously given the Mobile an A-number is especially unconvincing. FAC ¶ 237.  Plaintiff was not even the owner of the Mobile when the A-number was first given by the Foundation. *Id.* ¶ 62. Because no special relationship was owed to Plaintiff, the gross negligence claim fails.

### D.  Plaintiff's Product Disparagement Claim Fails

Plaintiff alleges that Defendants' December 2019 Report about the condition of the Mobile constituted product disparagement because it was "maliciously false" and intended to deprive Plaintiff of a sale. *Id.* ¶¶ 243, 245. To state a claim under New York state law, a plaintiff must "plead (1) falsity of the statement, (2) publication to a third person, (3) malice (express or implied), and (4) special damages." *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 291 (S.D.N.Y. 2016). Defendants contend that Plaintiff's claim of malice is conclusory. In order to make out malice, a defendant must have "engaged in the conduct for the

15

sole purpose of inflicting intentional harm on plaintiffs." *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 106 (2d Cir. 2012) (internal citation omitted). Additionally, "conduct which is motivated by economic self-interest cannot be characterized as solely malicious." *Stuart's, LLC v. Edelman*, 152 N.Y.S.3d 472, 476 (N.Y. App. Div. 2021). Plaintiff alleges that Defendants engineered the December 2019 Report on maliciously false grounds with the "intention of depriving Brodie of the ability to sell the Mobile." FAC ¶¶ 245, 243. Plaintiff has not alleged anything beyond economic self-interest; Plaintiff has failed to sufficiently allege malice. For this reason, Plaintiff's product disparagement claim is dismissed.

E.    Plaintiff's Tortious Interference Claim Fails

"A claim for tortious interference with a prospective business relationship ... must allege: (1) the defendant's knowledge of a business relationship between the plaintiff and a third party; (2) the defendant's intentional interference with the relationship; (3) that the defendant acted by the use of wrongful means or with the sole purpose of malice; and (4) resulting injury to the business relationship." *534 E. 11th St. Hous. Dev. Fund Corp. v. Hendrick*, 935 N.Y.S.2d 23, 24 (N.Y. App. Div. 2011). This is a difficult standard to meet. Plaintiff alleges tortious interference with respect to the sale with the buyer from Japan and later the guarantor from Monaco. FAC ¶¶ 254, 255. Earlier in the FAC, Plaintiff does state that, "Upon information and belief from the Auction House, however, after Rower spoke by phone with the Guarantor about the Mobile in or about November 2020, the Guarantor backed out of his guaranty agreement at even $4 million." *Id.* ¶ 131. But Plaintiff does not share how Auction House knew this. Simply knowing that Plaintiff might be trying to sell the Mobile based on the request for an A-number renewal is not enough to show tortious interference. *EXODUS TRANSPORT LTD, Plaintiff, v. NBC*

16

*UNIVERSAL MEDIA, LLC, Defendant.*, No. 25-CV-2751 (JPO), 2026 WL 351091 * 3 (S.D.N.Y. Feb. 9, 2026) (holding that without specific facts to show that defendant NBC knew a series would be cancelled, plaintiff failed to state claim of tortious interference). Additionally, even if Defendant Rower did speak with the guarantor, it does not necessarily mean that there was any actual malice. Defendants could have merely been stating their position as to the Mobile's condition from their perspective. Thus, Plaintiff has not alleged enough facts to demonstrate tortious interference.

### III.    Concerns About the Relief Plaintiff Seeks

While the Court does not dismiss Plaintiff's claims based on Defendants' argument that the market, not the Court, should be the arbiter of authenticity, the Court encourages Plaintiff, if he chooses to amend his complaint, to consider whether his claims require a finding from the Court that the Mobile be entitled to an A-number. The Court does not believe it has the authority to demand Defendants issue an A-number. *See Thome v. Alexander & Louisa Calder Found.*, 70 A.D.3d 88, 98 (1st Dep't 2009) ("Whether the art world accepts a catalogue raisonné as a definitive listing of an artist's work is a function of the marketplace, rather than of any legal directive or requirement.").

### CONCLUSION

For the foregoing reasons, Defendant's motion is **GRANTED in part.** If Plaintiff chooses to amend, Plaintiff has until April 21, 2026 to amend his Complaint.

**SO ORDERED.**

**Dated: March 31, 2026**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**